[Cite as *WIN Waste Innovations of Seneca Cty., L.L.C. v. Washington Twp. Bd. of Zoning Appeals*, 2026-Ohio-2870.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

WIN WASTE INNOVATIONS OF
SENECA COUNTY, LLC,

    APPELLEE,

      v.

BOARD OF ZONING APPEALS FOR
WASHINGTON TOWNSHIP,
HANCOCK COUNTY, OHIO,

    APPELLANT.

CASE NO. 5-25-28

OPINION AND
JUDGMENT ENTRY

---

Appeal from Hancock County Common Pleas Court
Trial Court No. 2024 CV 00164

Judgment Reversed

Date of Decision:  July 27, 2026

---

APPEARANCES:

    *Jeffrey M. Stopar* for Appellant

    *Steven A. Friedman* for Appellee

**WALDICK, J.**

{¶1} Defendant-appellant, the Board of Zoning Appeals for Washington Township, Hancock County, Ohio ("the BZA"), appeals the August 18, 2025 judgment of the Hancock County Common Pleas Court entered in favor of plaintiff-appellee, WIN Waste Innovations of Seneca County, LLC ("WIN Waste"). In the judgment appealed, the trial court reversed the BZA's denial of WIN Waste's application for a zoning certificate to construct a pond on a piece of real property located in Washington Township. For the reasons set forth below, we reverse.

*Procedural History and Relevant Facts*

{¶2} On September 15, 2023, WIN Waste filed an application to build a pond, approximately 94 acres in size, on a 155-acre property located at 23990 County Road 216 in Washington Township, Hancock County. That Washington Township property is nearby a solid waste disposal facility ("the landfill") owned and operated by WIN Waste in Seneca County. WIN Waste acknowledges that its intention in constructing the pond is to use it as a borrow pit, meaning that the company intends to export the spoils from the excavation of the pond for use as cover material at the landfill. Information presented by WIN Waste representatives at prior proceedings in this case reflects that the company anticipates taking four to five years to dig and remove all of the dirt necessary to construct the pond at issue.

{¶3} Hearings on WIN Waste's application were held before the Washington Township Zoning Commission, and the zoning commission then denied the

issuance of the zoning certificate sought by WIN Waste in order to build the pond. On January 26, 2024, WIN Waste appealed the decision of the zoning commission to the BZA. On March 26, 2024, the BZA upheld the decision of the zoning commission.

{¶4} On April 19, 2024, WIN Waste filed an administrative appeal in the Hancock County Court of Common Pleas. In the preliminary proceedings before the trial court in the administrative appeal, it was decided that the proper procedure actually required the Washington Township Zoning Inspector to make a determination on the pond application and that any appeal from that decision should then be made to the BZA. For that reason, on October 16, 2024, the parties filed a joint motion to remand the case to the Washington Township Zoning Inspector for consideration of the pond application, and that motion was granted by the trial court on October 17, 2024.

{¶5} On remand, after review of WIN Waste's application for a permit to build the pond, the Washington Township Zoning Inspector denied the application. That decision of the zoning inspector was then appealed by WIN Waste to the BZA.

{¶6} On January 7, 2025, the BZA held a hearing on the matter. Of particular relevance at the January 7, 2025 hearing was testimony received from one Randy Boes. Boes' sworn statement reflected that he has operated an excavation company for over three decades. In that time, Boes has dug three to four ponds each year,

primarily in Hancock, Seneca, and Wood Counties. At the hearing, Boes testified that, based on climate statistics, the area at issue receives approximately 40 inches of rain per year, with an evaporation rate of 30 inches of rain per year. Based on those statistics and a calculation relating to a pond with approximately 90 acres of water surface area, Boes indicated that it would take 10.6 years for the pond to fill. Additionally, as the drawings submitted by WIN Waste reflected an 18-foot difference in elevation in the land surrounding the proposed pond, Boes testified, "this thing will never, ever be full, never. Because they're not * * * building a bank down at the creek to make the pond level." (1/7/25 Tr., 27). Boes added that, based on his experience, "ponds dug near a ditch like that – not all the time, but most of the time, - does [*sic*] not have suitable water holding properties. Meaning the water will move through the soil." (*Id*.).

{¶7} On January 21, 2025, the BZA issued a decision upholding the zoning inspector's denial of WIN Waste's application for a zoning certificate to build the pond. In that January 21, 2025 decision, the BZA made the following findings in support of its denial of WIN Waste's application to build the pond at issue:

> 1. The proposed pond is so large, over 90 acres, that its construction necessarily converts this use from an agricultural pond to an industrial use, which is not permitted or contemplated in the A-1 Agricultural District. There were several versions of the plans submitted as part of the packed. [*sic*] When the zoning inspector requested clarification on which to use, WWSC identified Doc 10 – Attachment A – WIN Pond – Detailed Set – 6.19.2024.pdf as the final set. This drawing was not approved by the Hancock Soil and Water District, and therefore cannot be a basis for an approved artificial pond or lake. The original

drawing, which was approved by the Soil and Water District suggested a recreational area, which is not permitted in the A-1 District.

2. The necessary construction activities associated with the borrow pit would be permitted and better suited for an I-2 Industrial District.

3. WWSC has not submitted a site plan as required by Article XII, Section 16, which states, "A site plan shall be submitted to the Zoning Commission for Approval for any development, except agricultural, single-family and two-family residential." On this point, we specifically note that this issue has been raised specifically with the applicant, which has failed to submit a site plan although this application has now been pending for over one year. In addition, it is within our discretion to interpret both Article XII, Section 16 (site plans) and Article XII (Artificial Ponds or Lakes) together, so as to give both sections meaning in considering the underlying application and this appeal. We further find that nothing in Article XII, Section 20 expressly exempts ponds or lakes from the site plan requirement. The failure to submit to the site plan process is an independent basis for denying the requested permit.

4. We further find that although WWSC has at times described the proposed construction as a pond or lake, its own initial application identifies the project as a borrow area. We find that there is no dispute that the soils removed will be used as a cover for a nearby landfill. We therefore conclude that the proposed construction is not really a pond or a lake, but is, in fact, a borrow pit, and is therefore an industrial, not agricultural, use.

5. The septic systems of three houses to the immediate south of the property would drain into the proposed pond, and create health and safety issues. We specifically raised this issue with the applicant at the hearing, and the applicant declined to respond to those concerns or to offer any evidence or testimony on this point.

6. Given the difference in elevation of approximately 23 feet between the north end of the site and the south end of the site, it will take over a decade for the lake or pond to fill with water as testified by Randy Boes at the January 7, 2025 hearing. This was based on average rainfall and evaporation rates in the area. Indeed, some parts of the pond or lake will never be full due to (a) elevation issues; and (b) the

soil does not have adequate water holding property properties. [*sic*] This further supports our finding that this is actually not a pond or lake because it will not fill for years, and therefore will solely [*sic*] a borrow pit, not a pond, for a lengthy period of time, not permitted by the Zoning Resolution. We cannot and will not approve a borrow pit for a decade when industrial uses are not permitted.

7. The testimony of Randy Boes also demonstrates that even if we considered the proposed construction to be a pond or artificial lake, rather than an industrial borrow pit, the proposed pond/lake would not be constructed within the time limitations provided by Article XIX, Section 4(b)(5) of the Zoning Resolution because it cannot be filled within one or two years.

8. Finally, the testimony of Mr. Boes, who has constructed three or four ponds most years for nearly the last 30 years, testified that this is not the type of pond he has constructed in his three decades of experience in Hancock, Wood or Seneca Counties. Indeed, the largest pond he has constructed in his career is approximately one acre in size. Based on the testimony of Mr. Boes, which was not contradicted or challenged by WWSC, we conclude that this is not the type of "pond" or "lake" contemplated by the Washington Township Board of Trustees when enacting Article XII, Section 20 of the Zoning Resolution. This further supports our conclusion that the WWSC's proposed project is not a pond or lake that is permitted in the A-1 Agricultural District because of its sheer size and necessary industrial use components in the decade before it could fill with water.

9. A gas line has been proposed by WWSC on the east side of the property and, although that gas line is not, by itself, within the zoning authority of this Board, it may affect the proposed construction of any pond or lake, but WWSC has not addressed this basic land use concern in its application or at the hearing.

(1/23/2025 Notice of Filing, Exhibit A; Docket No. 30)

{¶8} On January 23, 2025, WIN Waste provided the Hancock County Common Pleas Court with notice of the BZA's decision. On April 1, 2025, the BZA

filed a notice of the filing of the record on appeal before the Court of Common Pleas.

{¶9} On August 18, 2025, the Court of Common Pleas filed a judgment entry reversing the decision of the BZA. That August 18, 2025 judgment of the trial court can be summarized as follows.

{¶10} With regard to the BZA's first finding that the requisite drawing or plan for the pond had not been approved by the Hancock Soil and Water District, the trial court found that such a plan had been submitted by WIN Waste and approved by the Hancock Soil and Water Conversation District.

{¶11} With regard to the BZA's second finding that the necessary construction activities associated with a borrow pit would be better suited for an Industrial District, the trial court found that WIN Waste's intent in creating the pond and its intended use of the excavated soil was, in essence, not relevant.

{¶12} As to the finding of the BZA that a site plan was required under the township zoning resolution and that a site plan had not been submitted by WIN Waste, the trial court found that the provision requiring a site plan was ambiguous and, construing the provision strictly in favor of WIN Waste, determined that a site plan was not required for the pond at issue.

{¶13} Regarding the BZA's determination that the proposed project was not a pond or a lake but, rather, a borrow pit, the trial court found that regardless of the

intended use of the project, the activities on the land would be the same and would result in a lake.

{¶14} With regard to the BZA's concern relating to nearby septic systems, the trial court ruled that the BZA could not base its denial of the application upon speculative future environmental impact of the lake.

{¶15} As to the BZA's sixth finding that the pond or lake would take over a decade to fill, and therefore was not a permitted-type pond, the trial court ruled that such a finding was a speculative concern about a future violation of the zoning regulations and therefore could not be a basis for the denial of WIN Waste's application.

{¶16} With regard to the BZA's finding that the pond or lake would not be constructed within the time limitations set forth in the township zoning resolution, the common pleas court again found that such a concern was merely speculative and could not be used as a basis for denying the pond permit.

{¶17} Regarding the eighth finding of the BZA, which was that the 90-acre pond sought to be constructed by WIN Waste was not a "pond" or "lake" as contemplated by the zoning resolution permitting the same, based on its size and intended use in the decade before it might fill with water, the trial court ruled that lakes are of indeterminate size and therefore the size of the project was not relevant to the approval or disapproval of WIN Waste's application.

{¶18} Finally, with regard to the ninth finding of the BZA, relating to concerns about a proposed gas line, the trial court held that consideration of the gas line was not within the authority of the BZA.

{¶19} Upon making those determinations, the common pleas court ruled that the BZA's decision denying the application to build the pond was arbitrary, capricious, and unreasonable, and therefore subject to reversal pursuant to R.C. 2506.04. Accordingly, the trial court reversed the decision of the BZA, ordered that the case be remanded to the BZA, and ordered that the BZA grant WIN Waste's application to construct the pond.

{¶20} On September 17, 2025, the BZA filed the instant appeal, in which it raises one assignment of error.

### Assignment of Error

**The Common Pleas Court erred in reversing the decision of the Washington Township Board of Zoning Appeals.**

{¶21} In the sole assignment of error, the BZA argues that the trial court erred in reversing the BZA's decision denying WIN Waste's application to construct the pond at issue.

{¶22} A township's authority to adopt and enforce zoning regulations is directly granted to it by the General Assembly through R.C. Chapter 519. See R.C. 519.02(A). Pursuant to R.C. 519.02, a board of township trustees can adopt a comprehensive zoning plan in order to promote the public health, safety, and morals. *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals,* 31 Ohio St.3d

260, 265 (1987). The purpose of local zoning is to control land usage in a particular area relating to the development of the community. *Families Against Reily/Morgan Sites v. Butler Cty. Bd. of Zoning Appeals*, 56 Ohio App.3d 90, 96 (12th Dist. 1989).

{¶23} "[Z]oning ordinances are to be construed in favor of the property owner because they are in derogation of the common law and deprive the property owner of uses to which the owner would otherwise be entitled." *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 2014-Ohio-4809, ¶ 34. Additionally, "when applying a zoning provision, a court must not view the provision in isolation; rather, its 'meaning should be derived from a reading of the provision taken in the context of the entire ordinance.'" *Id.* at ¶ 35, quoting *Henley v. City of Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 152 (2000).

{¶24} "Nevertheless, in interpreting a zoning ordinance, "'[a]n administrative agency's reasonable interpretation of local zoning codes is recognized as an area of administrative expertise and is to be presumed valid.'"" *Access Ohio, LLC v. City of Gahanna*, 2020-Ohio-2908, ¶ 16 (10th Dist.), quoting *JP Morgan Chase Bank, Inc. v. Dublin*, 2011-Ohio-3823, ¶ 11 (10th Dist.), quoting *Glass City Academy, Inc. v. Toledo*, 2008-Ohio-6391, ¶ 18 (6th Dist). "Unless the interpretation of a local zoning code is clearly in error, a court should defer to the administrative interpretation." *Id.*, citing *In re Aultman Hosp.*, 80 Ohio App.3d 134, 139 (10th Dist. 1992). "Such deference 'is based upon an awareness that an administrative judgment is " * * * the product of administrative

experience, appreciation of the complexities of the problem, realization of the statutory policies and responsible treatment of the facts."'" *Id.*, quoting *In re Aultman Hosp.*, at 139, quoting *Hamilton Cty. Bd. of Mental Retardation & Devopmental Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 151 (1989). *Accord*, *Lind Media Co. v. Marion Twp. Bd. of Zoning Appeals*, 2022-Ohio-1361 (3d Dist.).

{¶25} "Decisions of administrative agencies are directly appealable to a court of common pleas", which "has jurisdiction to review final orders issued by 'any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state.'" *Shelly Materials, Inc. v. Streetsboro Planning & Zoning Comm.*, 2019-Ohio-4499, ¶ 12, quoting R.C. 2506.01(A). "R.C. Chapter 2506 governs appeals to the courts of common pleas from final orders of administrative officers and agencies of political subdivisions, including * * * boards of zoning appeals." *Cleveland Clinic Found.*, *supra*, at ¶ 22.

{¶26} R.C. 2506.04 governs the standard of review the trial court must apply in such an appeal. *Id.* Under that statute, "[a]cting as an appellate court, the common pleas court 'may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.'" *Shelly Materials, Inc.* at ¶ 12, quoting R.C. 2506.04.

**{¶27}** In an R.C. Chapter 2506 administrative appeal, the trial court "weighs the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of the administrative agency." *Id.*, at ¶ 13.

**{¶28}** "A party who disagrees with a decision of a court of common pleas in an R.C. Chapter 2506 administrative appeal may appeal that decision to the court of appeals but only on 'questions of law.'" *Id.* at ¶ 17, quoting R.C. 2506.04. Consequently, "under R.C. 2506.04, an appeal to the court of appeals is 'more limited in scope' than was the appeal to the court of common pleas." *Id.*, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). "In addition to deciding purely legal issues, which are reviewed de novo, the court of appeals is charged with determining whether the trial court abused its discretion, 'which in this context means reviewing whether the lower court abused its discretion in deciding that an administrative order was or was not supported by reliable, probative, and substantial evidence.'" *Access Ohio, LLC*, *supra*, at ¶ 12, quoting *Shelly Materials, Inc.* at ¶ 17.

**{¶29}** Accordingly, our determination in this case "'is limited to whether the trial court made any errors of law assigned on appeal, which we review de novo, and whether the trial court abused its discretion in applying the law.'" *Lind Media Co. v. Marion Twp. Bd. of Zoning Appeals*, 2022-Ohio-1361, ¶ 19 (3d Dist.), quoting *Access Ohio, LLC* at ¶ 13. "'De novo review is independent and without deference to the trial court's determination.'" *Lind Media Co.,* at ¶ 19, quoting *ISHA, Inc. v.*

*Risser*, 2013-Ohio-2149, ¶ 25 (3d Dist.). "An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable." *Id*., citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶30} Finally, we note that "[i]nterpretation of a statute or ordinance is a matter of law" and thus the proper standard of review when undertaking such an interpretation is de novo. *State ex rel. Osborne v. City of North Canton*, 2019-Ohio-1744, ¶ 20 (5th Dist.), citing *State v. Straley*, 2014-Ohio-2139, ¶ 9. "The application of [a zoning statute] to the facts is a 'question of law' – 'an issue to be decided by the judge, concerning the application or interpretation of the law.'" *Access Ohio, LLC*, *supra*, at ¶ 15, quoting *Henley v. City of Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148 (2000). "That the application of such a zoning statute involves a consideration of facts or the evidence does not turn this question into a question of fact." *Id*.

{¶31} In the instant case, it is undisputed that the real property at issue is zoned A-1 in an Agricultural District. While the BZA makes a number of various arguments on appeal with regard to the claimed error on the part of the common pleas court, ultimately the BZA asserts that the project proposed by WIN Waste is not actually a pond or lake and, further, that WIN Waste's proposed project is contrary to the letter and intent of the A-1 Agricultural District provisions in the Washington Township Zoning Resolution. For those reasons, the BZA maintains

that it properly denied WIN Waste's application and that the trial court erred in holding otherwise.

{¶32} Therefore, we focus our review in this case on the pertinent provisions of the Washington Township Zoning Resolution, including but not limited to those provisions governing agricultural districts and ponds or lakes in that township.

{¶33} The version of the Washington Township Zoning Resolution applicable to this case begins with the following, setting forth the purpose and intent of all regulations contained within the resolution:

> The Board of Township Trustees of Washington Township, Hancock County, Ohio, hereby enact the following:
>
> A RESOLUTION, enacted under Section 519 of the Ohio Revised Code, for the purpose of promoting public health, safety, morals, comfort and general welfare; to conserve and protect property and property values; to secure the most appropriate use of land; and to facilitate adequate but economical provision of public improvements, all in accordance with a Comprehensive Plan, the Board of Trustees of this Township finds it necessary and advisable to regulate the location, size and use of buildings and other structures, percentages of lot areas which may be occupied; set-back building lines; sizes of yard; and, the use of land for trade, industry, residences, recreation or other purposes and for such purposes, divides the area of the Township into districts or zones.

{¶34} Pursuant to Article III, Section 1 of the Resolution, Washington Township is divided into eight types of zoned districts, with one type of those districts being "agricultural."

Case No. 5-25-28

{¶35} Article IV of the Resolution is captioned "A-1 Agricultural Districts" and Article IV, Section 1 sets forth the following as to the intent of the agricultural district zoning:

> The A-1 Agricultural Districts are intended to provide for agricultural use of those areas best suited to farming activity, and, recognizing that prime farm land is [*sic*] unrenewable resource, to protect and preserve such land for agricultural usage. The intent is to provide for an environment of predominantly agricultural activity, wherein residential development is clearly accessory and * * * ancillary to a farming operation.

{¶36} Article IV, Section 2 of the Resolution sets forth the principal uses permitted in A-1 Agricultural Districts in Washington Township as follows:

> In an A-1 Agricultural District, no building or land shall be used, and no building shall be erected except for one or more of the following specified uses unless otherwise provided in the Resolution:
>
> 1. Farms and farming operations.
> 2. Publicly owned and operated libraries, parks, parkways and recreational facilities.
> 3. Public, parochial and other private elementary [or] secondary schools offering courses in general education, and not operated for profit.
> 4. Churches and other facilities normally incident thereto.
> 5. Utility and public service building uses (without storage yards) when operating requirements necessitate the locating of such building within the district in order to serve the immediate vicinity.
> 6. Home occupations.
> 7. Accessory buildings and uses customarily incident to any of the above permitted uses.

{¶37} Article IV, Section 3 then provides a list of additional permitted uses of land in an A-1 Agricultural District, subject to special conditions, which are

-15-

nursery schools and day care centers, golf courses, home businesses, single family residences, specialized animal care, and preexisting lawful cemeteries.

{¶38} With regard to ponds or lakes, Article XII, Section 20 of the Washington Township Zoning Resolution at issue is captioned "ARTIFICIAL PONDS AND LAKES" and provides:

> Artificial ponds or lakes shall be permitted in all use Districts with review of the Zoning Inspector.
>
> (a) All artificial ponds or lakes shall comply with all, [*sic*] requirements of this Resolution including, but not limited to, setback and yard requirements from main structures.
>
> (b) In determining compliance with setbacks and yard requirements, the measurements shall be made as follows:
>
> a. For in-ground ponds or lakes or portions thereof, from the edge of the pond or lake bank nearest the road right-of-way or lot line to the road right-of-way or lot line.
>
> b. For above-ground ponds or lakes or portions thereof, from the lowest point on the outside of any embankment nearest the road right-of-way or lot line to the road right-of-way or lot line.
>
> (c) A permit may be issued only after Zoning Commission approval and if the application for a zoning certificate for artificial pond or lake is accompanied by a drawing made by or approved by the Hancock Soil and Water Conservation District or similar service.

{¶39} While the applicable Washington Township Zoning Resolution contains no definition of "pond" or "lake", Article II, Section 1 of the resolution governs the construction of the language contained therein, and provides that "[t]erms not herein defined shall have the meaning customarily assigned to them."

{¶40} Article XIV, Section 4(b)(5) governs the timeframe in which zoning certificates are valid, and provides:

> Zoning Certificates shall expire at the end of one (1) year from the date of issuance unless the construction or use has commenced within that period of time. Where construction is being diligently carried on, the Zoning Inspector may issue one (1) twelve (12) month extension of the expiration date.

{¶41} Article XV of the Resolution governs the board of zoning appeals and Article XV, Section 7, captioned "Miscellaneous", provides in relevant part:

> No order of the Board permitting a use of a building or premises shall be valid for a period of longer than one (1) year unless such use is established within such period[.]

{¶42} Finally, Article XIV, Section 4 of the Resolution governs zoning certificates. Section 4(a) of that Article provides that, "[n]o Zoning Certificates shall be issued for the erection, alteration or use of any building structure or part thereof, or for the use of any land, which is not in accordance with all provisions of this Resolution."

{¶43} Based on our review of the Washington Township Zoning Resolution and the record in this case, and upon applying the relevant principles of law set forth above, this Court concludes that the trial court erred in reversing the decision of the BZA.

{¶44} The BZA determined, based on the undisputed information and evidence before it, that the project sought to be undertaken by WIN Waste was not a "pond" or "lake" as contemplated by the zoning resolution provision permitting

the same, based on both the project's size and its intended use in the decade before it could fill, or partially fill, with water. In the judgment entered by the common pleas court reversing that decision, the trial court discounted that finding of the BZA and, instead, held that "lakes" are of indeterminate size and therefore the size of the project was not relevant to the approval or disapproval of WIN Waste's application. The trial court further held that, regardless of the intended use of the project, the activities on the land would be the same and would result in a lake.

{¶45} Those legal conclusions by the common pleas court appear, in large part, to have been based on the fact that the Washington Township Zoning Resolution contains no definition of "pond" or "lake", nor any size restrictions on the same. In discounting the decision of the BZA that the WIN Waste project is a borrow pit and not a pond or a lake, the trial court also noted that the term "borrow pit" is not defined in the Washington Township Zoning Resolution.

{¶46} However, as previously noted, while the Washington Township Zoning Resolution does not specifically define "pond" or "lake", Article II, Section 1 of the resolution governs the construction of the language used therein, and provides that "[t]erms not herein defined shall have the meaning customarily assigned to them."

{¶47} The Merriam-Webster Dictionary definition of "lake" is "a considerable inland body of standing water" and that same well-established authority on the English language defines "pond" as an "artificially confined body

of water" or a "body of water usually smaller than a lake". *Merriam-Webster's Collegiate Dictionary* (11th Ed. 2009). Those definitions comport with "the meaning customarily assigned to" those terms. Those dictionary definitions, and also the meaning customarily assigned to those terms, focus on the fact that ponds and lakes are bodies of water. However, the undisputed evidence before the BZA was that the project sought to be built by WIN Waste would take four to five years to excavate and over a decade to fill with water and, even then, would likely not ever be full for multiple reasons. On that basis, in part, it was reasonable for the BZA to conclude that the WIN Waste project did not constitute a pond or a lake.

{¶48} The BZA's determination that the WIN Waste project did not constitute a pond or lake was also based on the intended use of the excavated area, leading the BZA to conclude that the project was, in fact, a borrow pit.

{¶49} While the term "borrow pit" is not addressed nor defined in the Washington Township Zoning Resolution, the definition of that term has been long acknowledged by the Supreme Court of Ohio. In *Haynes v. Jones*, 91 Ohio St. 197 (1915), the Ohio Supreme Court noted:

> The term borrow-pit has a well-defined meaning in the science of civil engineering. It means a pit adjacent to a fill or embankment from which material is taken for the purpose of making the fill or constructing and maintaining the embankment. It is not the same as the procuring of material from remote places and hauling it to the improvement. On the contrary, it is an appropriation of the land itself adjacent to the improvement and for the purposes of the improvement.

-19-

*Id.*, at 201-202.

{¶50} Based on both common sense and the customary meaning of the terms at issue, we conclude on the specific facts of this case that a "borrow pit" is distinguishable from a pond or a lake. The fact that an excavated hole or void in the ground will potentially fill, or partially fill, with water years – or even decades – after its excavation does not automatically render that hole or void a "pond" or a "lake". If that were true, one could also argue that active stone quarries or coal mines constitute "ponds" or "lakes", which is clearly not the case.

{¶51} Accordingly, based on the meanings customarily assigned to the terms at issue in the matter before us and, in particular, considering the undisputed use to which WIN Waste seeks to put its project, the BZA had a rational and legitimate basis for concluding that the proposed project is not a pond or lake as permitted by Article XII, Section 20 of the township's zoning resolution. Put another way, it was well within the administrative expertise of the BZA, upon interpreting and applying the relevant provisions of the Zoning Resolution, to conclude that WIN Waste's request to build a pond is actually an attempt to circumvent the zoning regulations and to operate an unpermitted borrow pit for the benefit of the company's landfill. That is particularly true given that such intended use falls well outside of any of the low-impact uses expressly contemplated and permitted in A-1 Agricultural Districts by Article IV of the Zoning Resolution, *supra*.

{¶52} That conclusion is further bolstered by the one-year expiration date of zoning certificates and the one-year deadline for approved use to have begun, set forth respectively in Article XIV, Section 4(b)(5), and Article XV, Section 7, *supra*. While those provisions expressly relate to the expiration of certificates granted for a permitted use and the timeframe in which such permitted use must be established, as opposed to the initial approval thereof, this Court finds that those provisions do provide some guidance in the instant case. Specifically, because the evidence was undisputed that the proposed project would in no way be established within one year's time as a pond or lake, no matter how loosely defined, that fact lends further credence to the conclusion that the project at issue was not intended to be a pond or a lake within the scope of Article XII, Section 20 of the Washington Township Zoning Resolution.

{¶53} In summary, as noted above, a common pleas court is bound by the nature of administrative proceedings and must presume the decision of the administrative board is reasonable and valid. *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals*, 66 Ohio St. 3d 452, 456 (1993). A common pleas court may not substitute its judgment for that of the administrative agency. *Dudukovich v. Lorain Metro Hous. Auth.*, 58 Ohio St. 2d 202, 207 (1979). Instead, the common pleas court may only reverse if it finds the administrative "decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record."

R.C. 2506.04. The key term in the foregoing is "preponderance." *Parker v. Swancreek Twp. Bd. of Zoning Appeals*, 2006-Ohio-863, ¶ 34 (6th Dist.). If a preponderance of reliable, probative and substantial evidence exists, the court of common pleas must affirm the decision of the administrative agency or board. *Id.*

{¶54} In this case, for the reasons set forth above, there existed a preponderance of reliable, probative and substantial evidence to support the BZA's interpretation of the Washington Township Zoning Resolution when read as a whole. Accordingly, the trial court erred in reversing the decision of the BZA.

{¶55} As this Court finds that the language of the Washington Township Zoning Resolution is dispositive of this case, it is unnecessary for us to address the remaining arguments made by the BZA in support of its assignment of error.

{¶56} The assignment of error is sustained.

*Conclusion*

{¶57} Having found error prejudicial to the defendant-appellant, the Board of Zoning Appeals for Washington Township, Hancock County, Ohio, the August 18, 2025 judgment of the Hancock County Common Pleas Court is reversed.

***Judgment reversed***

**ZIMMERMAN, P.J., concurs.**

**WILLAMOWSKI, J., concurring separately.**

{¶58} I concur with the majority's decision to reverse the judgment of the trial court. Article XII, Section 20 of the Zoning Resolutions of Washington

Case No. 5-25-28

Township provide that a "permit may be issued only after Zoning Commission approval and if the application for a zoning certificate for artificial pond or lake is accompanied by a drawing made by or approved by the Hancock Soil and Water Conservation District". Art. XII, § 20(c). A review of the record before us shows that the original plan was submitted to the Hancock Soil and Water Conservation District and was approved. However, throughout these proceedings, the approved plan was changed, including the size and capacity of the pond. The record before this court does not indicate that any of the subsequent plans submitted for the permit were approved. As the revised plans were not approved, the permit could not have been issued for those plans pursuant to Article XII, Section 20 of the Zoning Resolutions of Washington Township. Thus, I concur with the judgment of the majority.

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignment of error is sustained and it is the judgment and order of this Court that the judgment of the trial court is reversed with costs assessed to Appellee for which judgment is hereby rendered. The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

---

Juergen A. Waldick, Judge

---

William R. Zimmerman, Judge

---

John R. Willamowski, Judge
Concurs Separately

DATED:
/jlm